# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

HILLSIDE PRODUCTIONS, INC., GARY
RONCELLI and JOSEPH VICARI,

    Plaintiffs/Counter-Defendants,

        Case No. 06-11566

    v.

COUNTY OF MACOMB,

    Defendant/Counter-Plaintiff.

                                           /

**OPINION AND ORDER GRANTING DEFENDANT'S
"MOTION FOR PARTIAL SUMMARY JUDGMENT"**

Pending before the court is Defendant County of Macomb's motion for partial summary judgment, requesting that this court enforce under the terms of the parties' contractual agreement certain provisions regarding parking revenues, gross ticket revenue, maintenance costs and property taxes. The court has reviewed the parties' briefs and concludes that a hearing is not necessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant Defendant's motion, with damages, if any, to be determined later.

## I. BACKGROUND

The parties entered into an agreement on May 19, 1999 that called for Plaintiff Hillside Productions, Inc. ("Hillside") to operate the Freedom Hill Amphitheater, an entertainment venue which is located at Freedom Hill County Park. (Sublease Agreement at 1, Pls' Ex. 1.) On March 21, 2000, the parties amended the agreement and extended its term of years. (Amend. to Sublease Agreement, Pls' Ex. 2.) The parties amended the agreement a second time on March 29, 2001, (Second Amend. to

Sublease Agreement, Pls' Ex. 3) ("Second Amendment"), and this agreement is the subject of the instant motion.

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'"). A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an essential element of the

claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences from those facts in a manner most favorable to the nonmoving party. *Wexler v. White's Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). The court is not to weigh the evidence to determine the truth of the matter, but must determine if there is a genuine issue for trial. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

## III.  DISCUSSION

### A.  Parking Revenue

The court has already decided that the unambiguous terms of the parties' agreement entitles Plaintiffs to 75% and Defendants to 25% of all parking revenue collected at Freedom Hill County Park.  (3/26/07 Order at 4-6.)  Defendant now claims its share of parking revenue that Plaintiffs collected by means other than physical collection at the Park -- namely, through season ticket agreements, sponsorship agreements and ticket surcharges included in sales by third-party service agencies such as Ticketmaster.  Defendant claims that it "just now learned of these agreements" in which Plaintiffs collect parking fees.  (Def.'s Reply Br. at 3.)

As detailed the court's earlier opinion and order, contracts formed in the State of Michigan are interpreted under Michigan law, which states that "[t]he primary goal in the construction or interpretation of any contract is to honor the intent of the parties."  *Sault*

3

*Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 372 (6th Cir. 1998) (quoting *Rasheed v. Chrysler Corp.,* 445 Mich. 109, 517 N.W.2d 19, 29 n. 28 (1994)). This court "must look for the intent of the parties in the words used in the instrument." *Id.* (citing *Michigan Chandelier Co. v. Morse,* 297 Mich. 41, 297 N.W. 64, 67 (1941)).

"The determination of whether a contract is ambiguous, thereby making extrinsic evidence admissible for interpretive purposes, is a question of law . . . ." *Id.* at 373 (citing *Wulf v. Quantum Chem. Corp.,* 26 F.3d 1368, 1376 (6th Cir.1994)). A court "does not have the right to make a different contract for the parties or to look to extrinsic testimony to determine their intent when the words used by them are clear and unambiguous and have a definite meaning." *Id.* (quoting *Michigan Chandelier,* 297 N.W. at 67). A contract is ambiguous if its words may reasonably be understood in different ways. *Id.* (quotation omitted). Because the court concludes that the contract language at issue is not ambiguous, it will not consider the council meeting minutes and other extrinsic evidence that the parties attach to their briefs.

Where possible, the court must draw the intent of the parties from the "four corners" of their contract. *Flajole v. Gallaher*, 93 N.W.2d 249 (Mich. 1958). In turn, when a contract is unambiguous, this court must construe it according to the plain meaning of its terms. *Ford Motor Co. v. Northbrook Ins. Co*., 838 F.2d 829, 832 (6th Cir. 1988). The relevant contractual language states:

> The County shall continue to collect the parking fees for all events at Freedom Hill County Park, including the Freedom Hill Amphitheater. The determination of parking rates shall be made mutually by the County and Hillside. *Parking revenues shall be divided on the following basis* during the remaining term of the Sublease Agreement; 75% to Hillside; 25% to the County; provided, however, Hillside guarantees the County shall receive parking revenues in the minimum amount of $125,000 per year during the remaining term of the Sublease Agreement.

4

(Second Amend. to Sublease Agreement at 3, Def.'s Ex. 3 (emphasis added).) Plaintiffs miss the point when they argue that Defendant is seeking to force them to bear the expense of collecting parking revenue and meet the expectation that the parking revenue must then be turned over immediately to Defendant. Rather, Defendant merely seeks enforcement of the agreed-upon terms of the parties' agreement. The above-emphasized language refers to all parking revenue without limitation concerning who collected it or how. While the beginning of the paragraph contemplates that Defendant will do the collecting, the court does not interpret the agreement to mean that Defendant's failure to collect would somehow divest it of its duly bargained-for one-quarter share.

Indeed, it stands to reason that Plaintiffs would welcome the flexibility to offer comprehensive packages, which include ready processing of parking fees, to customers, be they sponsors, season ticket holders or single-event patrons who choose to buy through an intermediary. The agreement by no means requires Plaintiffs to collect any parking revenue. But where they perform collection activity, Plaintiffs must set aside one quarter of all parking revenue for Defendant. Because the language of the contract is unambiguous, there is no question of fact concerning Defendant's entitlement to certain parking revenues.[1]

---

[1] Because Defendant does not state the amount of parking revenue at stake, the court will not set the amount, which, absent a stipulation, will depend on further motion practice or, ultimately, resolution at trial. Similarly, the court expresses no view concerning the timing of parking revenue payments from Plaintiffs to Defendant. The court's decision is limited to construing the agreement to require that Plaintiffs account for all parking revenue collection they undertake, and that they set aside and remit Defendant its one-quarter share of that amount.

## B. Gross Ticket Revenue

Defendant next argues that under the agreement it is entitled to 1% of all gross revenue derived from ticket sales and that any claim by Plaintiffs derived from payment of such amounts should be denied. (Def.'s Br. at 7, 14-15.) According to Paragraph 3 of the agreement:

> Hillside shall pay to the County 1% of all gross revenue derived from ticket sales for events held at the Amphitheater during the remaining term of this Sublease Agreement; provided, however, Hillside shall not be obligated for such payment with respect to any events held prior to the completion of the roof over the Amphitheater seating area. Hillside agrees to begin construction of such roof as soon as reasonably feasible upon the obtaining of any necessary permits after the end of the 2001 event season. Upon completion of the roof, such payments will be due once a year within forty-five (45) days of the last event being held at the Amphitheater by Hillside for which tickets were sold. Hillside shall provide, at County's request, a detailed accounting of all ticket revenues for each event held. The parties further agree that the Commission may conduct a reasonable audit of the records concerning ticket sales made by Hillside. For purposes of this paragraph 3, "gross ticket revenue derived from ticket sales" shall be based upon the general admission ticket price for each seat and shall not include any amounts for parking, VIP or hospitality services, or any similar charges.

(Second Amend. to Sublease Agreement at 3, Def.'s Ex. 3.) Plaintiffs argue in response that (1) any declaration in favor of Defendant would be improper because Defendant's motion raises no essential element of a claim or defense in this case and (2) Plaintiffs' theory of recovery under 42 U.S.C. § 1983 renders the agreement unenforceable because of the allegedly coercive behavior Defendant undertook under color of law.

The court rejects Plaintiffs' first argument. Defendant's counterclaim raises the issue of gross ticket revenues. Specifically, Count II alleges breach of contract for Plaintiffs' failure to pay over 1% of gross tickets sales. (Counterclaim at ¶ 32.) Count I of the counterclaim is for declaratory relief, exhorting the court to adjudicate and declare

the rights of the parties pursuant to their agreement. (*Id.* at ¶¶ 27-28.) The issues Defendant raises in its motion thus relate directly to the counterclaim and are squarely before the court.

Plaintiffs' second argument also lacks merit. In support of its position, Plaintiffs cite scant authority, which is limited to a general definition of economic duress. The principal case upon which Plaintiffs rely, however, rejected a claim of economic duress. *Cumberland & Ohio Co. v. First American Nat'l Bank*, 936 F.2d 846, 850 (6th Cir. 1991) (holding that five-year failure to challenge the agreement on grounds of duress barred present argument that the waiver was not effective). Moreover, *Cumberland* stressed that a contract entered into under economic duress is "*voidable by the victim, not void.*" *Id.* (emphasis added, citations omitted).[2] Further, a party must act promptly, upon removal of duress, to seek to avoid enforcement of the contract and must not retain any consideration after learning that the agreement is voidable. *Id.* (citing *DiRose v. PK Mgt. Corp.*, 691 F.2d 628, 633-34 (2d Cir. 1982); *Crocker v. Schneider*, 683 S.W.2d 335 (Tenn. Ct. App. 1984); *Grillet v. Sears, Roebuck & Co.*, 927 F.2d 217, 220 (5th Cir. 1991).

In this case, Plaintiffs admittedly filed their action and advanced a theory of unenforceability due to duress. In spite of this duress, it appears that Plaintiffs continue to operate under the agreement. Further, Plaintiffs moved for partial summary judgment and obtained enforcement of part of the Second Amendment to the Sublease

---

[2] While *Cumblerland* applied Tennessee law, the same general definition and legal effect of economic duress applies in Michigan. *See e.g. Horn v. Cooke*, 325 N.W.2d 558, 560-61 (Mich. Ct. App. 1982) ("If a signature to an arbitration agreement is obtained by coercion, the agreement, like any contract, is void or at least voidable due to duress.").

Agreement. In particular, Plaintiffs persuaded the court that the unambiguous terms of the agreement concerning shared parking revenues entitled Plaintiffs to three-quarters of all such revenue generated by the Park. In effect, Plaintiffs affirmatively sought and obtained, as opposed to merely passively received, genuine consideration pursuant to the agreement. Curiously, now Plaintiffs maintain that Defendant's attempt to gain its consideration under the same agreement must be thwarted by a theory of selective unenforceability due to economic duress. Plaintiffs cannot have it both ways. As their course of conduct and the court's earlier construction of the agreement require, the parties have a valid and enforceable agreement. Plaintiffs may not cherry-pick which provisions of the agreement are enforceable and which are not.

Accordingly, the court finds that Paragraph 3 is susceptible to only one interpretation. Namely, subject to certain conditions that do not appear germane to the instant motion, Plaintiffs must pay Defendants 1% of all gross revenue derived from ticket sales for events held at the Amphitheater. Gross revenue is, as the agreement states, the general admission ticket price for each seat, excluding any amounts for parking, VIP or hospitality services, or any similar charges. The parties dispute whether lawn tickets qualify as a seat under the agreement. A lawn ticket, by definition, grants the holder no specific or designated physical seat, but, rather, entry to the lawn area, where the holder may find a place to enjoy the entertainment. According to the Master Plan, which falls within the four corners of the parties' agreement as Exhibit A to the Second Amendment to Sublease Agreement,[3] the "Total Seating Capacity" of the Amphitheater is "4,000 fixed + 2,000 lawn." (Master Plan, Def.'s Ex. B.) Read in

---

[3](*See* Second Amend. to Sublease Agreement at 2, ¶ 1, Def.'s Ex. 3.)

context, the full agreement therefore contemplates that lawn tickets are seats for purposes of gross revenue derived from ticket sales. As with fixed seats, the holder is essentially renting limited space, as expressed by the separate seating capacities for each category of admission. That space, as it is commonly understood and as the Master Plan indicates, is called a seat. It is thus clear that a ticket is necessarily for a seat, be it fixed or lawn. Because the language of the contract is unambiguous, there is no question of fact concerning Defendant's entitlement to 1% of the gross revenue from ticket sales. The court need not rely upon the extrinsic evidence Defendant presents.[4]

### C. Maintenance Costs

According to Paragraph 8 of the agreement:

> Hillside will be responsible for all maintenance, including but not limited to, landscaping, lawn and weed mowing, garbage removal, lighting, snowplowing and site clean-up . . . . The County will be responsible for the garbage removal and site clean-up after all events which it may conduct[.]

(Second Amend. to Sublease Agreement at 5, Def.'s Ex. 3.) Pursuant to the above analysis, the court finds that Paragraph 8 is unambiguous and enforceable, subject to a later determination of damages, if any. It appears that Defendant is not claiming that Plaintiffs failed to pay maintenance costs or that Defendant is otherwise entitled to any damages under this contractual provision. Instead, Defendant requests that this court deny whatever damages Plaintiff claims relative to maintenance costs. For the reasons stated above, Plaintiffs' arguments in response, which in essence are the same, are not persuasive. Because the language of the contract is unambiguous, there is no question of fact concerning Plaintiff's obligations to provide for certain maintenance costs.

---

[4]Because Defendant does not state the amount of gross ticket revenue at stake, the court will not set the amount, which, absent a stipulation, will depend on further motion practice or, ultimately, resolution at trial.

### D. Property Taxes

According to Paragraph 9 of the agreement:

> In the event real or personal property taxes are assessed against Hillside in connection with its operation of the Amphitheater, Hillside agrees that it shall bear the responsibility of any such real or personal property taxes notwithstanding paragraph 14 of the Sublease Agreement which is hereby specifically amended.

(Second Amend. to Sublease Agreement at 5, Def.'s Ex. 3.) As above, the court concludes that Paragraph 9 is unambiguous and enforceable, subject to a later determination of damages, if any. Similarly, it again appears that Defendant claims no actual damages, but instead a declaration that Plaintiffs may claim no damages relative to the property tax provision. For the reasons stated earlier, Plaintiffs' same arguments in response are not persuasive. Because the language of the contract is unambiguous, there is no question of fact concerning Plaintiff's property tax obligations.

In sum, the court concludes that there is no question of fact concerning the viability, or lack thereof, of Plaintiff's theory of unenforceability. As discussed above, the parties' course of conduct and the court's construction of the unambiguous terms of the contract support a finding as a matter of law that the parties' agreement is valid and enforceable. The court's opinion forecloses Plaintiffs' theory that it entered the agreement under duress and that enforcement of the agreement is improper. The court's analysis does not reach Plaintiffs' other theories of recovery, including, for instance, alleged lost business and other claimed consequential damages.

## IV. CONCLUSION

IT IS ORDERED that Defendant's Amended Motion For Partial Summary Judgment" [Dkt # 93] is GRANTED consistent with the findings and declarations expressed herein.

                                        S/Robert H. Cleland
                                        ROBERT H. CLELAND
                                        UNITED STATES DISTRICT JUDGE

Dated: June 14, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 14, 2007, by electronic and/or ordinary mail.

                                        S/Lisa Wagner
                                        Case Manager and Deputy Clerk
                                        (313) 234-5522