# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

HILLSIDE PRODUCTIONS, INC., GARY
RONCELLI and JOSEPH VICARI,

    Plaintiffs/Counter-Defendants,

v.                                       Case No. 06-CV-11566

COUNTY OF MACOMB, et al.,

    Defendants/Counter-Plaintiffs.
                                       /

## OPINION AND ORDER DENYING PLAINTIFFS'
## OCTOBER 19, 2007 MOTION *IN LIMINE*

Pending before the court is Plaintiffs' "Motion *In Limine* . . . ," which was filed on October 18, 2007.[1] Defendants County of Macomb and Macomb County Parks and Recreation Commission ("MCPRC") responded on October 26, 2007. The matter is fully briefed and the court concludes that a hearing is not necessary. *See* E.D. Mich. LR 7.1(e)(2). The court will, for the reasons stated below, deny Plaintiffs' motion.

## I. BACKGROUND

Plaintiffs assert various claims arising out of its business relationship with Defendants, which calls for Plaintiffs to operate the Freedom Hill Amphitheater, Defendants' asset, in exchange for certain money and revenue sharing. Specifically, Plaintiffs allege a number of claims that sound in contract and tort law, including alleged deprivation of constitutional rights in violation of 42 U.S.C. § 1983. The current dispute centers around Plaintiffs' discovery requests concerning the alleged reliance of the

---

[1]Plaintiffs filed a corrected motion on October 19, 2007 [Dkt. # 146], which Plaintiffs' counsel asserts is identical in substance and different only to the extent that certain clerical errors were eliminated.

MCPRC on the advice of corporation counsel,[2] including an internal memorandum, with respect to certain MCPRC decisions and conduct. The main issues are (1) whether the discovery is relevant to any fact of consequence in this case and (2) whether the attorney-client privilege is waived as it pertains to that discovery.

The court will focus on the arguments of the parties, as a detailed recitation of the underlying facts is unnecessary. Plaintiffs contend that three categories of otherwise privileged communications between MCPRC and counsel are relevant to Plaintiffs' claims and Defendants' defenses and counterclaims: communications concerning (1) whether Defendant "Macomb County was entitled to keep all parking revenue from non-Hillside-sponsored events," (2) "the recommendation of counsel included in the MCPRC-approved motion of October 12, 2005" and (3) "the authority of the Board of Commissioners to approve Hillside's request for consent to an assignment of the sublease agreement."[3]  (Pls.' Mot. at 8.)

It appears that Plaintiffs' primary argument is not that the discovery is relevant to Plaintiffs' burden of proof for any of its claims. Rather, Plaintiffs "are concerned that [D]efendants will raise at trial the defense that they acted in good faith or that they have some 'qualified immunity' because they allegedly relied on advice of counsel, and therefore did not intentionally violate [P]laintiffs' due process rights." (*Id.* at 37.) Plaintiffs further "maintain that if [D]efendants intend to rely on advice of counsel as a

---

[2]The court will refer to Defendants' corporation counsel as, simply, "counsel."

[3]Categories 2 and 3 are intertwined to the extent that the record appears to describe the October 12, 2005 recommendation of counsel as concerning the authority of MCPRC and/or the Board of Commissioners to assign the sublease. (Pls.' Mot. at 34-35) (citing DiMaria Dep. at 55-56, Pls.' Ex. 21).)

defense to the claim of coercive extortion as a deprivation of constitutional rights, discovery as to that advice of counsel is relevant and should be discoverable." (*Id.* at 38.) With respect to the deprivation of Plaintiffs' equal protection rights, Plaintiffs suspect that Defendants will claim a defense of rational basis predicated upon advice of counsel. (*Id.* at 38-39.) Plaintiffs are unsure whether Defendants will raise such defenses and therefore ask the court to either allow the discovery or preclude Defendants from asserting such defenses. (*Id.* at 37-38.)

Elsewhere, Plaintiffs argue that Defendants have in effect invoked such a defense in public statements and in prior motion practice before this court. (*Id.* at 39-41.) Plaintiffs further characterize Defendants as pleading an alternative defense that, relying on advice of counsel, Defendants merely held certain revenue for an indefinite period and never intended to keep it. (*Id.* at 39-40.) Separately, Plaintiffs cite deposition testimony to the effect that Defendants' knowingly improper withholding of revenue was a negotiation tactic meant to "bring these boys [Plaintiffs] back to the table," (*id.* at 40), which Plaintiffs claim would support their claims under 42 U.S.C. §§ 1985(3) and 1986, (*id.*).

Plaintiffs also argue that the attorney-client communications regarding parking revenue are relevant to their claim of consequential damages and to their defense against the breach of contract and tort counterclaims. (*Id.* at 41.) According to Plaintiffs, if Defendants knew they were not entitled to certain revenue, "then [D]efendants cannot assert that they relied on the advice of counsel as a defense to [P]laintiff's claims for consequential damages for [D]efendants' breach of contract without disclosing that advice of counsel. (*Id.*)

With respect to the other two categories of attorney-client communication, the sum of Plaintiffs' argument is the following

> this relates to [Plaintiffs'] claim under Section 1983 that [D]efendant's intentional withholding of this consent in order to extort concessions to which they were not entitled by forcing Hillside to re-negotiate of [sic] the sublease itself violated [P]laintiff's constitutional rights and serves as one of the acts in the pattern and practice of which [P]laintiffs complain.

(*Id.* at 42.)

Defendants respond that qualified immunity is a defense to individual liability and that Plaintiffs have not sued anyone in that capacity. (Defs.' Resp. at 18-19.) Defendants disavow raising a qualified immunity defense on behalf of MCPRC or the Board of Commissioners as a municipal body. (*Id.* at 19.) Specifically, Defendants claim they "have not raised reliance on the advice of counsel as an affirmative defense to any of Plaintiffs' claims." (*Id.* at 20.) Defendants concede that, under some circumstances, a party may waive its attorney-client privilege, but they deny having done so in this case. (*Id.*) Defendants further attack the relevance of the discovery, arguing that (1) a municipal body's resolutions and minutes speak for themselves and (2) Plaintiffs have failed to show that a majority of the MCPRC members' votes were improperly motivated. (*Id.* at 20-27.)[4]

---

[4]Because the court will find that the relevance issue is dispositive, the court will not summarize the parties' arguments concerning whether Defendants waived their attorney-client privilege. The court does note, however, that it would not be inclined to conclude that stray remarks by individual members of a municipal body in select depositions and media sources would have the effect of binding the full municipal body to even a limited a waiver of the attorney-client privilege. Defendants' argument on this issue, (Defs.' Resp. at 29-33), is persuasive.

## II. DISCUSSION

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Generally, relevant evidence is admissible and irrelevant evidence is inadmissible. Fed. R. Evid. 402. The court decides in its discretion what evidence is admissible. *See e.g. Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 298 (6th Cir. 2007).

The court is not persuaded that Plaintiffs have made a sufficient threshold showing of relevance. As Defendants have now confirmed, they will not assert a defense of qualified immunity, and the court intends to hold Defendants to that representation. Without this defense, the disputed evidence makes no fact of consequence any more or less likely. The court further notes that there is no issue of individual liability in this case, as Defendants are solely local government bodies. The bulk of Plaintiffs' argument for relevance therefore lacks a predicate in this case and Plaintiffs are assured, as they requested in the alternative, that Defendants shall not later rely on such a defense.

The same analysis applies to other anticipated defenses, as Defendants have plainly stated, "Defendants have not raised reliance on the advice of counsel as an affirmative defense to any of Plaintiffs' claims." (Defs.' Resp. at 20.)[5] The court therefore finds that the other manner of defenses that Plaintiffs expect find no predicate

---

[5]The court reiterates that it will hold Defendants to this state of affairs, in the event that such defense is raised at a later point when further discovery is not feasible and when Plaintiffs may be prejudiced by such a change.

in this case and therefore provide no basis for a determination that the requested discovery is relevant. For the same reason, the court rejects Plaintiffs' contention that Defendants have functionally raised such defenses.

Moreover, the court has already addressed Plaintiffs' theory that Defendants coerced them into modifying their contractual relationship:

> In sum, the court concludes that there is no question of fact concerning the viability, or lack thereof, of Plaintiff's theory of unenforceability. As discussed above, the parties' course of conduct and the court's construction of the unambiguous terms of the contract support a finding as a matter of law that the parties' agreement is valid and enforceable. The court's opinion forecloses Plaintiffs' theory that it entered the agreement under duress and that enforcement of the agreement is improper. The court's analysis does not reach Plaintiffs' other theories of recovery, including, for instance, alleged lost business and other claimed consequential damages.

(6/14/07 Order at 10.) As such, the law of the case doctrine precludes some or all of Plaintiffs' claims of coercion, which would in turn forbid discovery that is irrelevant because it concerns an already dismissed theory of recovery. *See e.g. United States v. Robinson*, No. 06-5787; ___ F.3d ___; 2007 WL 2780499 (6th Cir. Sep. 26, 2007) (citing *Arizona v. California*, 460 U.S. 605, 618 (1983)). With respect at least to affirmative defenses, court therefore sees no adequate grounding in relevance for Plaintiffs' requested discovery.

Plaintiffs appear to also argue that the requested discovery is relevant to their burden of proof. Namely, Plaintiffs seek to prove that the MCPRC had an improper motive when it voted to do certain things to Plaintiffs, including withholding parking revenue. Section 1983 liability for a governmental entity requires a showing of "an unconstitutional action that implements or executes a policy statement, ordinance,

regulation, or decision officially adopted and promulgated by that body's officers . . . ." *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 261 (6th Cir. 2006). Where an official action on its face evidences no improper motive, a plaintiff must prove that the public body acted out of a constitutionally impermissible motive. *Id*. *Scarbrough* concerned a former school superintendent's § 1983 claim against a county education board and some of its individual members for not appointing his as director of schools. *Id*. at 253-54. With respect to the board of education, the Sixth Circuit applied a "but for" test that holds the governmental body liable "for actions that it would not have taken 'but for' members acting with improper motive." *Id*. at 262 (citations omitted). Though the Sixth Circuit applied this test in the context of reversing a grant of summary judgment for the board of education, this court concludes that the test equally applies in the procedural context of Plaintiffs' motion *in limine*. In other words, the purpose of the requested discovery is to find evidence tending to prove or disprove that Plaintiffs' can meet the but for test.

The parties dispute whether Plaintiffs have presented adequate evidence showing that a majority of the MCPRC voted in reliance on the advice of counsel. Resolving this argument is key because Plaintiffs contend that, if Defendants had an improper motive, it was contained in, and perhaps disguised by, the advice of counsel. From the standpoint of relevance, Plaintiffs need not show at this early juncture whether there in fact was such an improper motive; indeed, without the requested discovery in hand Plaintiffs cannot make such a showing. Plaintiffs have had the opportunity, however, to explore whether the MCPRC as a whole relied upon the advice of counsel,

whatever the content of that advice.[6] In the absence of such reliance, the discovery is irrelevant, as it would not tend to prove or disprove that the MCPRC acted with a constitutionally improper motive. *See id.* at 261-63.[7]

Though Plaintiffs suggest that the minutes of the MCPRC "cannot be deemed accurate in all cases," (Pls.' Reply Br. at 5), the court must nonetheless rely on the record before it. The minutes presented indicate that during the pertinent time period MCPRC had eleven voting members. (3/23/06 Minutes, Pls.' Ex. 1; 3/28/06 Minutes, Defs.' Ex. 2; 10/12/05 Minutes, Pls.' Ex. 23.) Therefore, to establish as a preliminary matter the relevance of the advice of counsel, Plaintiffs must show that at least six MCPRC members relied upon that advice when they voted to withhold parking revenues from Plaintiffs.[8] The record does suggest that the vote was unanimous.

---

[6] The court finds that Defendants' objections to Plaintiffs' line of inquiry focused upon the content of the advice of counsel, not whether a deponent relied on such advice. Defendants thus did not halt questioning before Plaintiffs could explore whether any deponent relied on the advice of counsel.

[7] The parties have not briefed which Defendant, if any, had the requisite final authority to establish municipal policy. *Scarbrough*, 470 F.3d at 262. The court need not decide the question for purposes of its determination of relevance.

[8] The inquiry is complicated by the fact that the minutes merely indicate that the motion to retain parking revenues carried, without listing how each member voted. (3/23/06 Minutes at 2, Pls.' Ex. 1.) But there is record evidence indicating how some members voted and whether they relied on the advice of counsel. (*See e.g.* 4/2/06 Macomb Daily Article, Pls.' Ex. 6 (quoting MCPRC member Phil DiMaria saying, "[b]ased on our legal counsel's advice, I voted not to pay them [Plaintiffs] the extra parking fees any more.").) The court notes that it cannot infer from the four corners of the minutes that DiMaria, who made the motion, and Klein, who seconded it, voted yes. (3/23/06 Minutes at 2, Pl.'s Ex. 1.) A substantive position one way or the other does not necessarily follow a procedural action, as, for instance, DiMaria or Klein may simply have wanted to call the question and vote against the measure.

8

(3/24/06 Detroit News Article, Pls.' Ex. 4.)  The record, however, fails to establish that at least six members voting yes relied on the advice of counsel.

The court's review of the record reveals the following members making statements that their votes relied on the advice of counsel:

> 1. Phil DiMaria told a local newspaper, "[b]ased on our legal counsel's advice, I voted not to pay [Plaintiffs] the extra parking fees any more."
>
> 2. Anthony Lipinski averred that "I would have always deferred to corporation counsel." (Lipinski Dep. at 23, Pls.' Ex. 12, Defs.' Ex. F.)[9]
>
> 3. Thomas Raymus stated that he had difficulty understanding the contract and "only went by what our attorney said." (Raymus Dep. at 13, Pls.' Ex. 15.)
>
> 4. Eugene Schabath, who reported to public works commissioner Anthony Marrocco, was advised by Marrocco to "base your decision on what the corporation counsel has to say." (Schabath Dep. at 17-19, Pls.' Ex. 19.)[10]

While other members may have made oblique reference to the advice of counsel (*see e.g.* Slinde Dep. at 46-47, Pls.' Ex. 13), those statements did not assert that a vote relied upon such advice.  In the case of Slinde, her statements concerned how the language of the contract arose and how a certain split of parking revenue began.  Marvin Sauger, meanwhile, simply suggested "getting an outside attorney to look at this." (Sauger Dep. at 44-45, Pls.' Ex. 14.)  Dino Bucci averred that he had discussions

---

[9] The court rejects Defendants argument that Plaintiffs misrepresented the testimony of Lipinski.  (Defs.' Resp. at 24.)  While Lipinski's expressed "understanding" was "just to adhere to the contract that was agreed," a full reading of his testimony indicates that his understanding of the contract was based upon deferring to the advice of counsel.  (Lipinski Dep. at 22-23, Pls.' Ex. 12, Defs.' Ex. F.)

[10] The court does not view this testimony as inadmissible hearsay, as Marrocco's statement as Schabath's superior is a legally operative act that is admissible in the same way that "you're fired" would be an admissible statement in employment litigation.

9

with counsel, but he described his own understanding of the contract. "[T]hat's my interpretation of it, and I firmly believe that that's what it means to me." (Bucci Dep. at 72, Pls.' Ex. 16.)

Finally, Plaintiffs present the testimony of Henry Riberas, the non-voting spokesman of MCPRC. According to him, he did not attend a scheduled meeting with Plaintiffs after the parking revenue vote because

> the action taken by the County at that [10/23/06 MCPRC] meeting that were further confirmed by my personal meetings with Commissioner Perna, Bucci and my telephone calls with DiMaria and Sauger, based on what they told me then about, you know, their purpose in doing this, hatching this little plot to bring [Plaintiffs] back to the table, we weren't going to go to that meeting [on April 3, 2006].

Riberas Dep. at 204, Pls.' Ex. 22. Riberas described the purpose of the plot.

> Well, Commissioner DiMaria and Commissioner Bucci both indicated that they were fully aware that they weren't entitled to that money and that this play on the part of the Count was intended to do one thing. By this time the County had the Asset Purchase Agreement. They understood that [Plaintiffs] were going to personally receive parking revenues for three years. Mr. DiMaria said to me specifically that look, we know we are not entitled to this money, but our Legal Counsel says if nothing else, this will bring these boys back to the table. Bucci confirmed this. Both of them, well, Bucci let me read the memo. Mr. Perna quoted from the memo, as did Mr. DiMaria, and so it became very clear to us then what was really going on here.

(*Id.* at 205.)

At most, Riberas's testimony confirms DiMaria's vote relied on counsel, which the court has already established, and adds Bucci to the list, as Bucci allegedly "confirmed" the plot and the DiMaria's recitation of the alleged advice of counsel.[11] Riberas's

---

[11] The court is inclined to view the hearsay statements Riberas attributes to DiMaria and Bucci as admissible statements against interest. Riberas only claims that Perna read out loud from an internal memorandum and attributes no statement to Sauger.

10

remaining testimony is equivocal and attributes no particular improper statement, motive or action to Perna or Sauger. The court does not read Riberas's use of "they" as impugning the behavior of all four MCPRC members mentioned in the vicinity of that word. Without more clear deposition testimony and record evidence, the court finds that only a minority of MCPRC might have based their vote on the advice of counsel: DiMaria, Lipinski, Raymus, Schabath and Bucci.[12] As such, the record indicates that only five of the eleven MCPRC members may have relied upon the advice of counsel, whatever the content of the advice and whatever the motives of the individual members. Because any alleged improper motive depends in this case upon actual reliance on advice from counsel, Plaintiffs have failed to meet the "but for" test of *Scarbrough*. The requested discovery is therefore also irrelevant with respect to Plaintiffs' burden of proof for its claims, particularly under 42 U.S.C. § 1983, against Defendants.

### III. CONCLUSION

IT IS ORDERED that "Plaintiffs' Corrected Motion *In Limine* . . ." [Dkt. # 146] is DENIED.

        S/Robert H. Cleland
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated: November 6, 2007

---

[12] The court is aware that Riberas's testimony directly contradicts Bucci's claim that he had his own understanding of the contract. With respect to Bucci's reliance on advice from counsel, there is at least some basis for the court to conclude that Bucci did so rely. The court's analysis does not presume to decide a credibility contest between Riberas and Bucci.

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 6, 2007, by electronic and/or ordinary mail.

            S/Lisa Wagner
            Case Manager and Deputy Clerk
            (313) 234-5522

12

S:\Cleland\JUDGE'S DESK\C2 ORDERS\06-11566.HILLSIDE.DenyPlsMotionInLimine.wpd