**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

HILLSIDE PRODUCTIONS, INC., GARY
RONCELLI and JOSEPH VICARI,

    Plaintiffs/Counter-Defendants,

                                                Case No. 06-CV-11566-DT

v.

COUNTY OF MACOMB,

    Defendant/Counter-Plaintiff.

                                                /

**OPINION AND ORDER GRANTING DEFENDANT'S "MOTION TO EXCLUDE EXPERT WITNESS TESTIMONY . . . " AND DENYING "MOTION OF PLAINTIFFS TO EXCLUDE OR LIMIT EXPERT WITNESS TESTIMONY . . ."**

This case involves several claims, under both federal and state law, arising out of the parties' contractual and commercial relationship concerning the operation of the Freedom Hill Amphitheater. The parties now dispute the admissibility of their competing expert reports, particularly as they relate to the calculation of potential damages and, relatedly, mitigation of damages. Pending before the court are cross-motions to exclude expert witness testimony, both filed on October 31, 2007. The court heard argument on the motions at a hearing on December 19, 2007. For the reasons stated below, the court will grant Defendant's motion and deny Plaintiffs' motion.

**I. DISCUSSION**

**A. Standard**

Federal Rule of Evidence 702 provides that:

If scientific, technical or other specialized knowledge will assist the trier of
fact to understand the evidence or to determine a fact in issue, a witness
qualified as an expert by knowledge, skill, experience, training, or

> education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* the Supreme Court held that, when faced with a proffer of expert scientific testimony, the trial judge is assigned "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. 579, 580 (1993). This ruling was later interpreted by the Court to apply to all expert testimony, not only scientific testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

The party proffering the expert bears the burden of persuading the trial court that the expert has specialized knowledge that will aid the fact finder in understanding the evidence or determining a fact at issue. *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n. 10). The trial court has wide discretion when determining whether to admit or exclude opinion testimony. *United States v. Paris*, 243 F.3d 286, 288 (6th Cir. 2001).

Expert testimony on ultimate issues for the trier of fact is not *per se* inadmissible, but the court has latitude to restrict testimony that is not helpful to jurors. Fed. R. Evid. 704; *United State v. Sheffey*, 57 F.3d 1419, 1425 (6th Cir. 1995); *Shahid v. City of Detroit*, 889 F.2d 1543, 1547-48 (6th Cir. 1989) (exclusion of expert testimony is not proper if expert's opinion on the ultimate issue amounts to a legal conclusion). Expert opinions should not be admitted if they merely tell the jury what result to reach. *Woods v. Lecureux,* 110 F.3d 1215, 1220 (6th Cir. 1997) ("It is, therefore, apparent that

testimony offering nothing more than a legal conclusion--i.e, testimony that does little more than tell the jury what result to reach--is properly excludable under the Rules.").

## B. Defendant's Motion

Defendant challenges the expert report and deposition testimony of Mark A. Crawford, C.P.A., Plaintiffs' expert.  Defendant argues that Crawford's conclusions about Plaintiffs' total economic loss "are not based on sufficient facts and data, and/or are not the product of reliable methodology and principles."  (Def.'s Br. at 3.)  The court agrees.[1]  Crawford estimates about $16.6 million in damages: (1) $8.5 million in "lost proceeds" from the failed asset purchase agreement with Palace Sports and Entertainment Hillside ("PSE Hillside"), (2) $2.6 million in lost 2006 income, (3) $1.7 million in loss of "cash flow value" (*i.e.*, projected income) from PSE Hillside, (4) $2.7 million in damages related to Independence Hall and (5) various lesser items of damages, including legal fees.  (Crawford Report, Def.'s Ex. 3.)  Crawford's report and accompanying deposition testimony fail to adequately support the amounts listed in his summary of economic loss.

Crawford's report is heavy on argumentative narrative and short on verification for his figures.  The discussion portion of the report is nineteen pages long, of which the

---

[1]The court does not agree, however, with Defendant's argument that Crawford, lacking specialized knowledge in the operation of an entertainment facility, is therefore unqualified to offer his opinion on general questions of economic loss.  Crawford's expertise is generally applicable.  The court is aware of no authority requiring specialized knowledge about the entertainment industry for an accounting expert to offer his opinion on what is in essence a question about the bottom line of a business operation, whatever the character of the business.  Rather, the court's analysis turns upon whether Crawford relied on sufficient facts or date and applied reliable principles and methods.

first six are a "background" section laced with advocacy.  For example, Crawford describes at least one of Defendant's decisions as "wrongful" and refers to a "tremendous rupture" in the relationship between Plaintiffs and Palace Sports & Entertainment, Inc.  The tenor of Crawford's report likely stems from the fact he, by explicit admission in several footnotes, exceprted portions from Plaintiffs' complaint and/or mediation summary.[2]

Read in whole, the report appears to merely parrot Plaintiffs' hoped-for recovery without making an independent evaluation of what loss is real and capable of empirical confirmation.  The list of materials reviewed and analyzed contains mainly the contracts at issue in this case, pleadings filed in this court or in facilitative mediation and various unidentified internal accounting reports from Hillside.[3]  The report also makes cryptic reference to "[c]ertain information and oral representations."  At the outset, the court has difficulty evaluating the reliability of a report that claims specific losses based upon unspecified documents, information and oral representations.

---

[2]Specifically, Crawford attributes such excerpting to the following sections of his report: (1) background, (2) summary of lost proceeds from asset purchase agreement, (3) summary of actual 2006 loss incurred by Hillside, (4) summary of cash flow value from PSE Hillside, LLC, (5) summary of damages related to Independence Hall, (6) summary of damages related to legal fees, (7) summary of damages related to maintenance costs and (8) summary of damages related to 1% of ticket revenues.  These eight sections account for eighteen of the nineteen pages of Crawford's discussion.  The only exception is a chart of Plaintiff's claimed economic loss.  The court thus cannot know what part of Crawford's report is his independent work, and not simply excerpts of the work of Plaintiffs' attorneys.

[3]Crawford's report makes clear that its list of materials is not exhaustive but that it does represent the majority of documents provided to him.

Perhaps the most glaring example of unsubstantiated conclusion is Crawford's assertion that the full contract price of the Amphitheater constitutes an $8.5 million loss, without offsetting the value of the asset that Plaintiffs retained when the transaction fell through. Crawford's conclusion conflates two distinct economic concepts: proceeds and economic loss. Basic economics presumes that a price for a good is made in exchange for, at least in large measure, the value of the good. As a corrolary, when a sale is not consummated, the seller does not gain the sale price, but he does retain the value of the good. The real economic loss must therefore equal the purchase price minus the value of the good retained. Crawford's report fails to account for why a different formula should apply in this case.

With respect to expected profits, Crawford's estimate is not based on sufficient facts or the product of reliable methodology. It is undisputed that Hillside did not make a profit before 2006. Crawford projected over $2 million for 2006, due to vague synergies that PSE would provide and based upon alleged PSE projections. Relying upon actual 2005 figures, PSE projected only about 10% of Crawford's figure, premised largely upon a reduction in expenses from cutting the salaries and benefits of Hillside employees whose services PSE employees would instead provide. Further, Crawford admitted that income figures from comparable entertainment venues were difficult to obtain and he therefore could not compare his projection to the performance of similar facilities. (Crawford Dep. at 77, Def.'s Ex. 2.)

Crawford even gave the response "right out of my head" when he responded to a question asking what data or methodology supported his assumption of a 5% annual growth rate for PSE Hillside's projected net income. (*Id.* at 141.) The court appreciates

5

Plaintiffs' argument at the hearing that Crawford's regrettable remark came in the context of difficult questioning and therefore the court should merely view it as an exasperated utterance. The standard of review, however, does not require the court to read the deposition testimony in the light most favorable to Plaintiffs. Even if it did, the record fails to support Plaintiffs' charitable characterization. The court cannot allow suspect conclusions based upon a key assumption that, by admission, merely appear in an expert's mind.

There is simply too great of an analytical gap between Crawford's projection of lost income and the data he conjured. Finally, with respect to damages related to Independence Hall, Crawford failed to account for business that Hillside might have acquired in the absence of a liquor license and, importantly, for what proportion of loss Hillside may have already recovered in its lawsuit against the City of Sterling Heights. Under the circumstances, the court has little or no confidence in the reliability of Crawford's conclusions. As gatekeeper, the court must exclude such proferred evidence. The court will therefore grant the motion to exclude his report.

### B. Plaintiffs' Motion

Plaintiffs challenge the conclusions of Defendant's expert, Dr. Larry G. Chiagouris. Plaintiffs argue that (1) Chiagouris lacks the expertise to interpret the parties' contractual language and (2) his conclusions rely upon speculation. The court, having reviewed Chiagouris's report and the parties' briefs, finds Plaintiffs' arguments unpersuasive. The court does not agree that his conclusions necessarily rest upon a particular interpretation of the contractual language "outside of the Premises." The report admittedly references this concept, but the bulk of it concerns packaging or

bundling different forms of advertising and seeking alternative methods of generating advertising revenue. Further, even if some interpretation of the contract is necessary for portions of the report to be useful, the court can evaluate at a later juncture if the interpretation is accurate and therefore useful to the finder of fact. Separately, some or all of the expert report may be moot in light of the court's disposition of the parties' cross-motions for summary judgment.

With respect to the alleged speculation in the report, the court views Plaintiffs' arguments as more relevant to the weight that the factfinder should give the report, as opposed to the nature of the underlying data or the reliability of the methodology and principles employed. Chiagouris's failure to personally visit the Amphitheater and his lack of specific knowledge about the Michigan market are not dispositive. As with Crawford, the qualifications of Chiagouris are generally applicable. Defendants, further, present a reasonable basis for their expert to not compare Freedom Hill Amphitheater to Meadowbrook or DTE Energy Amphitheater: lack of comparability and, importantly, direct instruction from counsel to not inquire about facilities operated by the Palace of Auburn Hills, as Plaintiffs allegedly discouraged Defendant at the outset of this litigation from having contact with the Palace. (Def.'s Br. at 12-13.) Chiagouris evaluated other venues with certain shortcomings that Plaintiffs stress, but these drawbacks, again, speak to the weight of the evidence, which is for the factfinder to decide.

Concerning other methods of generating revenue, Plaintiffs also attack the quality of the evidence and question whether they had any contractual obligation to undertake such endeavors. It strikes the court as odd that Plaintiffs would on the one hand attack the report for relying upon an interpretation of contractual language and

then rely themselves on a contractual theory for avoiding another part of the report. Without evaluating the proper weight of the evidence, the court finds that it is relevant to Defendant's counterclaim and that it is the product of sufficient data and adequate methodology. The court will therefore deny Plaintiffs' motion to exclude the expert report.

## II. CONCLUSION

IT IS ORDERED that Defendant's "Motion to Exclude Expert Witness Testimony . . ." [Dkt. # 156] is GRANTED.

IT IS FURTHER ORDERED that "Motion of Plaintiffs to Exclude or Limit Expert Witness Testimony and Report . . ." [Dkt # 159] is DENIED.

    s/Robert H. Cleland  
ROBERT H. CLELAND  
UNITED STATES DISTRICT JUDGE

Dated: February 15, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 15, 2008, by electronic and/or ordinary mail.

    s/Lisa G. Wagner  
Case Manager and Deputy Clerk  
(313) 234-5522